W. H. ROBERTSON *et al.*, Respondents, v. CLEVELAND
& AURORA MINERAL LAND COMPANY, Appellant.

St. Louis Court of Appeals, April 7, 1897.

1. **Trespass:** PETITION: SUFFICIENCY OF. In trespass, a petition which
stated that at the time of the alleged trespass plaintiffs were in ex-
clusive and peaceable possession of the premises, that they were
mining under and in compliance with the terms of a valid lease from
the former owners, which had not expired, that defendant unlawfully
and against plaintiff's will ousted them from possession of the prem-
ises, and thereby deprived them of the beneficial use of the property
for the remainder of the term,—was a sufficient statement of a cause
of action.

2. ——: FORCIBLE ENTRY: EVIDENCE. Where it was not pretended
that the entry was made with plaintiff's consent, and the evidence
was that an employee of defendant, acting under defendant's orders,
first demanded of plaintiff's employees possession of the premises,
which was refused, and afterward returned with two other employees
of defendant and renewed his demand, whereupon they surrendered
the premises under compulsion, as one of them testified, and because
they thought it would not be proper to remain, the evidence tended
to prove a forcible entry.

3. **Lease:** GOOD FAITH: EVIDENCE: JURY QUESTION. Where there was
evidence that work done on the premises for one month was not done
in good faith or with any intention of benefiting defendant as lessee,
or with the idea of a further prosecution of the work under the lease,
but plaintiff's evidence admitted of a contrary inference, the question
was one of fact for the jury.

4. **Damages, Computation of:** COMPETENCY OF EVIDENCE FIXING
BASIS FOR. The admission of plaintiff's testimony as to amount of
royalty paid for one month, was not prejudicial error, where the wit-
ness, in fixing the basis for computation of damages, attempted to
ascertain the amount from three checks, claimed to have been given
in payment of royalty for that month, and it was admitted that two
of the checks were given in payment of royalty for ore mined during
that month, and all the evidence tended to prove the other check was
in payment of royalty for the preceding month, and the verdict fell
far short of the damage sustained by the plaintiffs.

5. Instruction. It is a sufficient answer to an objection by one party to the use of a word in an instruction for the other, as misleading, that an instruction for the party objecting used the same word in the same connection.

6. ———. An instruction, not authorized by the evidence, was properly refused.

*Appeal from the Lawrence Circuit Court.*—Hon. Joseph French, Special Judge.

Affirmed.

*Carr McNatt* with *Henry Brumback* for appellant.

The petition is not sufficient to support a judgment. *State to use v. Bacon*, 24 Mo. App. 403 at 406; *Bank v. Fisher*, 55 *Id.* 53; *Inhabitants v. Williams*, 53 Mo. 141; *Frazer v. Roberts*, 32 *Id.* 457; *Jones v. Fuller*, 38 *Id.* 366, 367.

There was no evidence to support the allegations of the petition, intended to be pleaded, and the case should have been taken from the jury at the close of plaintiff's evidence. *Berning v. Medart*, 56 Mo. App. 443; *Carroll v. Interstate R. T. Co.*, 107 Mo. 653; *Powell v. R. R.*, 76 *Id.* 80; *Lenox v. R. R.*, *Id.* 86; *Reichenbach v. Ellerbe*, 115 *Id.* 588, 595; *McCartney v. Finnell*, 106 *Id.* 445.

The court erred in permitting witnesses to testify, over defendant's objection, to mere mathematical calculations and logical conclusions from false or imaginary premises, to influence the jury in awarding damages. *Hurt v. R'y*, 94 Mo. at 260; *Weaver v. R'y*, 60 Mo. App. at 210; *Belch v. R. R.*, 18 *Id.* at 83; *Birney v. R. R.*, 20 *Id.* 410.

The instructions given in behalf of plaintiffs were contradictory, misleading, and erroneous, especially number 3, giving the court's definition of a compliance with a written contract. *Gregory v. Singleton*, 54 Mo.

App. 60; *Frederick v. Algaier*, 88 Mo. 603; *Stevenson v. Hancock*, 72 *Id.* at 614; *Hickman v. Link*, 116 *Id.* 123; *Bankston's Adm'r v. Farris*, 26 *Id.* at 177.

The court erred in refusing the instructions offered by defendant, particularly instruction number 17, that if plaintiffs voluntarily surrendered the premises to defendant, they could not recover. *Kraft v. Boyd*, 32 Mo. App. at 401; *Mackler v. Cramer*, 32 *Id.* 550; *Bowland v. City of Kansas*, *Id.* 8.

The verdict and judgment are contrary to the admitted facts. *Holt v. Martin*, 53 Mo. App. 188; *Newland College v. Borck*, 44 *Id.* 19; *Wilburn v. R'y*, 48 *Id.* 224; *Mauerman v. R'y*, 41 *Id.* 348; *Boggess v. R'y*, 118 Mo. 328.

For a violation of plaintiff's covenants they forfeited all rights to mine or search for ore, and defendants had a perfect right of re-entry. *Lunsford v. Lead Co.*, 54 Mo. 426; *Boone v. Stover*, 66 *Id.* at 435; *Chynowitch v. Mining Co.*, 74 *Id.* 174.

*H. H. Bloss* and *William B. Skinner* for respondents.

The petition in this case is good under repeated decisions of our courts. *Kerr v. Simmons*, 82 Mo. at 275.

Where there is any evidence, which tends to establish the complaint or defense, from which the jury might reasonably infer the essential facts, the courts should not take the case from the jury. *Twohey v. Fruin*, 96 Mo. 104.

The testimony of plaintiff as to payment of royalty in computing damages, was not speculative, nor a mere expression of opinion by a non-expert witness, and does not fall within the rule laid down in *Hurt v. R. R.*, 94 Mo. 261.

Plaintiffs held the premises in controversy under a lease, and not under a license. *Boone v. Stover*, 66 Mo. 430.

The character of work done upon the premises by respondents and their subtenants between the time their plant was destroyed by fire, and the date of the alleged forfeiture under the lease, would avoid such forfeiture; or, at least whether such work was a substantial compliance with the lease, was a question for the jury. *Mineral Land Co. v. Ross*, 36 S. W. Rep. (Mo.) 216.

### APPELLANT'S REPLY.

The facts in this case are entirely different from those stated in *Mineral Land Co. v. Ross*, cited by respondents, and it has no application.

BIGGS, J.—On the sixth day of April, 1891, Warren Vertrees and others owned jointly certain mining lands, which they had subdivided into mining lots. On the day stated they leased to plaintiffs what is known as the "Bonanza lot," being one hundred and ninety-eight feet from north to south, and two hundred feet from east to west, and also a lot lying immediately west of the "Bonanza lot." The plaintiffs were granted the right to take and remain in possession of the lots for the purpose of mining them, from the tenth day of April, 1891, to the tenth day of April, 1894. Among other covenants in the lease, the plaintiffs agreed that they would "*mine said premises continuously, in good faith, and in a minerlike manner*, keep a correct account of all ores and minerals taken from said premises, clean, prepare and market the same to best advantage, and pay to said first parties * * * fifteen per cent of the net cash value of all such minerals * * *, and to pay the same weekly on Monday of each week * * * that a

violation of any of the conditions of this agreement shall forfeit all rights of said second parties or any one holding under them  *   *  *,  and finally at the end of their term or in case of forfeiture as above, that they and those claiming under them will quit and surrender to said first parties or their legal representatives or assigns, full and free possession of said premises and hereby authorize them, their agents or assigns, to enter in and upon said premises and remove therefrom any and all fixtures, machinery, tools, etc., belonging to said second parties or those claiming under them, without notice or process of law, and hereby agree to save them harmless for so doing." About the twentieth of October, 1892, Vertrees and his co-owners sold the lots to one Baldwin, who in turn sold them to defendant. On the twenty-sixth of November, 1892, the plaintiffs' mining plant, which they had erected on the leased premises, was burned. On the second day of February, 1893, the defendant served the plaintiffs with notice of a forfeiture of the lease. The right to claim a forfeiture was the alleged failure of plaintiffs to work or mine the lots in the manner stated in the lease. A few days afterward the defendant sent one Ross to take possession of the lots. He found two employees of plaintiffs in possession. They were engaged in repairing the cribbing in the pump shaft. Ross requested them to surrender the possession of the lots, which they refused to do. Afterward on the same day Ross, acting under the orders of defendant, returned to the premises in company with two men, who were also employees of defendant, and he again demanded possession of the lots. After some controversy the plaintiffs' servants left the premises and Ross took possession. These are the facts out of which this litigation has arisen. The plaintiffs set forth in their petition the facts and circumstances attending the

letting, and the subsequent entry by defendant. They also averred that the entry by defendant was unlawful; that it was against the will of plaintiffs, and that they thereby had been deprived of the beneficial enjoyment of the leased premises for the remainder of the term. The petition also averred that the plaintiffs had faithfully complied with the conditions or requirements of the lease. The damages were laid at $7,000. The answer is a general denial. There was a trial before a jury, which resulted in a verdict and judgment for plaintiffs for $500. The defendant has appealed and complains of the insufficiency of the petition and evidence, of the action of the court in giving and refusing instructions, and in admitting incompetent evidence.

The objection to the petition is that it fails to allege the violation by the defendant of any property rights of plaintiffs. The substantive facts

TRESPASS: sufficiency of petition.

briefly stated are these: on the seventh day of February, 1893, the plaintiffs were in the exclusive and peaceable possession of the lots. They were mining them under and in compliance with the terms and requirements of a valid lease executed by the former owners of the property. At that time the lease had about fourteen months to run. The defendant without lawful authority and against the will of plaintiffs ousted them from the possession of the premises. Plaintiffs were deprived of the beneficial use of the property for the remainder of the term by reason of the alleged unlawful act of defendant. These facts we think state a good cause of action.

It is next insisted that the instruction for nonsuit ought to have been given, which was asked by the defendant. In support of this assignment

FORCIBLE entry: evidence.

the contention is, that there is no evidence that the defendant used any force in ob-

taining possession of the property, or that plaintiffs complained to defendant of the alleged disseizin; and further that all of the evidence tended to prove that plaintiffs failed to mine the property in conformity with the covenants in their lease, and being thus in default they voluntarily surrendered the possession in obedience to the notice of forfeiture.

The idea of counsel seems to be that in the absence of evidence tending to prove threats or the use of force by Ross, the surrender of the possession by the employees of plaintiffs will be regarded as a voluntary abandonment. No authorities are cited in support of this position. There was evidence tending to prove that Ross first came alone and demanded of Butler and Rosnick (the men who were repairing the shaft) the possession of the property. They refused to comply with the demand. Soon afterward Ross returned and renewed his demand. At that time he was accompanied by two men. In speaking of what occurred Butler testified: "He (Ross) compelled us. We thought we would have to go. He told us we would have to go. We went because he ordered us to go and we did not think it would be proper to stay any longer." The testimony of this witness when considered in connection with the attending circumstances, tended to prove a forcible entry, there being no pretense that the entry was with the consent of the plaintiff.

The further point that no complaint was made of the alleged disseizin is not borne out by the record. One of the plaintiffs testified that on the day of the ouster he went to the premises and complained to Ross of the wrong done and demanded of him that he give up the possession, which he declined to do.

The remaining ground of nonsuit is that plaintiffs did not mine the lots "continuously in good faith," as

they covenanted in the lease they would do.
The case was tried by both parties and was
submitted to the jury upon the theory, that
if the plaintiffs failed to mine the lots "continuously in
good faith," then the forfeiture was rightly declared,
and the defendant could not be held. There are many
facts and circumstances which strongly tend to prove
that the work done on the premises in the latter part
of January was not done in good faith—that is, with
any intention of benefiting the defendant as lessee, or
with the idea of a further prosecution of the work under
the lease. But the evidence of plaintiffs fairly admits
of a contrary inference, which made the question one
of fact for the jury and not of law for the court. It
would serve no good purpose to go into the details of
the testimony. We therefore conclude that the circuit
court did right in refusing to sustain the demurrer to
the evidence.

*LEASE: good faith: evidence: jury question.*

In fixing the basis for the computation of the damages one of the plaintiffs was permitted to testify as to
the amount of royalty paid for the month
of November, 1892. This amount the
witness attempted to ascertain from three
checks, which he claimed were given in
payment of royalty for that month. One of the checks
was for $78.85, and was drawn in favor of Baldwin; the
other two (aggregating $68.07) were admitted to have
been given in payment of royalty for ore mined during
that month. Taking the two amounts as a basis, the
witness determined that the net profits of the mine for
that month were $579.88. The claim is that the basis
fixed is a false one, in that all of the evidence tended to
prove that the check to Baldwin was in payment of
royalty on ore which was mined during the preceding
month. If this be conceded the admission of the evidence can not be prejudicial or reversible error for the

*COMPUTATION of damages: competency of evidence fixing basis.*

reason that if the amount of the other checks be taken as the correct basis, the verdict falls far short of the damage which plaintiffs sustained.

The third instruction given at the instance of the plaintiffs is as follows: "The court instructs the jury that mining or *working* on any part of the ground described in plaintiffs' lease, either INSTRUCTION. by plaintiffs, their employees or subtenants, would be a compliance with the terms of said lease." The objection made to this instruction is, that in the use of the word "working" the jury were virtually told that any kind of work done on the premises, if done in good faith, would preserve the plaintiffs' rights under the lease. A sufficient answer to this objection is, that the defendants' fourteenth instruction makes use of the same word in the same connection. But aside from this we do not think that the jury could have been misled. The words "mining" and "working" were used interchangeably during the trial, both by counsel and witnesses, and the jurors could not possibly have been mistaken as to the kind of work which was contemplated by the parties to the lease. The matter is put beyond doubt by the plaintiffs' fifth instruction. There the duties of the plaintiffs in respect of the mining of the lots were set forth in the language of the lease itself, and the jury were told that if the plaintiffs "had not *mined* the premises continuously and in good faith" up to the time defendant took possession, then there could be no recovery.

The defendant also complains of the refusal of the court to give the following instruction:

"The court instructs you that, even though you may believe from the evidence, that J. B. Ross and others took possession of the shaft on the INSTRUCTION. premises known as the Big Bonanza shaft, and that they did so by virtue of the

written contract between the defendant and said Ross and others, which was read in evidence, yet, if you further believe from the evidence that such shaft was not taken by force but that plaintiffs voluntarily surrendered possession of such shaft upon notice from defendant or its agents so to do or upon the request of said J. B. Ross, then plaintiffs are not entitled to recover in this action, and your verdict must be for the defendant.''

This instruction was properly refused, for the reason that there was no evidence to authorize it. All of the testimony tended to negative the idea of a voluntary surrender of the premises.

Objections are urged against other instructions, but we will not discuss them. We have carefully read the instructions and noted the objections, and our conclusion on the whole case is that it has been fairly tried and therefore the judgment of the circuit court ought to be affirmed. It is so ordered. All the judges concur.